IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


JEFFERY EARL MATLOCK                                                      PLAINTIFF

              v.                    Civil No.   3:15-cv-03083-TLB-MEF

WARDEN DANNY HICKMAN;
LIEUTENANT JUAN CRIBBS, Jail
Commander; CORPORAL HALL;
SERGEANT CORY SPAIN;  CORPORAL
BERNER; and OFFICER GUSTIN                                            DEFENDANTS


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed by the Plaintiff, Jeffery Earl Matlock, pursuant to 42 U.S.C.

§ 1983.  Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Delta Regional Unit of the Arkansas Department of

Correction (ADC).  At the times relevant to this Complaint, Plaintiff was incarcerated in the Carroll

County Detention Center (CCDC).  While there, Plaintiff maintains the Defendants violated his

federal constitutional rights.  Specifically, Plaintiff maintains his Due Process rights were violated

in connection with a disciplinary hearing and the decision to put him on administrative segregation

at the conclusion of his disciplinary segregation rather than return him to general population.

Defendants filed a Motion for Summary Judgment (Docs. 19-21) on February 26, 2016.  On

March 29, 2016, the Plaintiff filed a number of exhibits (Doc. 24) in response to the Summary

Judgment Motion.  On April 12, 2016, a hearing was held to allow the Plaintiff to testify in response

to the Motion.

-1-

Plaintiff thereafter asked for an extension of time to file a written response (Doc. 27).  The request was granted in part (Doc. 28).  Plaintiff was given until July 1, 2016, to submit any written response.  To date, Plaintiff has not filed a written response, he has not submitted another request for an extension of time to do so.  The Motion is ready for decision.

## I.  BACKGROUND

Plaintiff was booked into the CCDC on June 27, 2015.  *Defts' Ex.* 1 at 25.[1]  He remained incarcerated there until September 3, 2015, when he was transferred to the ADC.  *Id.*

On July 2, 2015, there was a physical altercation in E-pod involving Inmate Hampton, Inmate Kerry Parks, and the Plaintiff.  *Plff's Ex.* 3.  The aggressors were Parks and the Plaintiff.  Following the incident, Corporal Berner indicated that the night before he had been approached by Parks who stated that he had "issues with" the Plaintiff and Hampton.  *Id.*  However, Corporal Berner then observed the two, Parks and Plaintiff, were sitting on a bunk and talking.

According to Plaintiff, Carlton Hampton, who dated Parks' sister, owed the Plaintiff money and ended up being booked into the jail.  *Defts' Ex.* 1 at 37.  When Hampton was put into the same barracks as the Plaintiff, someone woke the Plaintiff up and told him.  *Id.*  Plaintiff testified he went over and hit Hampton a "few times in the face and walked away."  *Id.*  Plaintiff testified that he was unaware of the fact that Parks' had also been striking Hampton.

Following the July 2 incident, Parks and the Plaintiff were moved.  *Plff's Ex.* 3.  They were both charged with a violation of "U-8 Assaulting another inmate."  *Id.*  The possible total disciplinary time for the incident was 60 days and 60 days loss of privileges.  *Id.*  Sergeant Andrea Morrell recommended the "full time due to the violent nature of the charge."  *Id.*

---

[1] Citations to this exhibit are to the deposition page number located in the lower right corner of the page.

Plaintiff testified he ended up pleading guilty at the hearing, but he maintains his Due Process rights were violated. *Defts' Ex.* 1. at 39.  He stated he was never issued a notice of disciplinary violation or given an opportunity to call witnesses. *Id.* at 39-40.  He only learned about the disciplinary charge when he was taken up front for the hearing. *Id.*  He received 60 days in disciplinary segregation, but he got off in twenty days because of good behavior. *Id.* at 40.

In mid-July, 2015, Inmate Parks and the Plaintiff were put in the same cell. *Defts' Ex.* 1 at 41-42.  Lieutenant Cribbs told the two to "tough it out" and live together. *Id.*  Plaintiff testified that he did not know at this time that Parks had told the police that he wanted to "whup" Plaintiff. *Id.* at 42.  Specifically, Parks had informed Corporal Berner that he had heard Plaintiff had robbed Parks' "girlfriend or had something to do with his girlfriend." *Defts' Ex.* 1 at 37.  Plaintiff asserted this was false. *Id.*

Plaintiff testified he never got the full story from Parks. *Defts' Ex.* 1 at 42.  Plaintiff, however, said Parks acted like they were best friends. *Id.*

Plaintiff testified that on July 28, 2015, the two had a verbal altercation and they almost got into a physical altercation. *Defts' Ex.* 1 at 42.  They came to the conclusion that it was best if they did not cell together. *Id.*  According to Plaintiff, Parks got on the intercom and told Officer Gustin that he locked the Plaintiff out of the cell and that Plaintiff could not come back in there. *Id.*  At the same time, Plaintiff was telling the Defendants that he could not go back in the cell. *Id.*  According to Plaintiff, "we both declared each other as enemies right then."  Plaintiff testified that he still did "not know [Parks] said I had something to do with his girlfriend." *Id.*  Plaintiff indicated he was told that "we don't care. . .go back in the cell with him." *Id.* at 43.  Plaintiff responded that they could not "force me to go in a cell with an enemy." *Id.*  Plaintiff only returned to his cell after Parks had

-3-

been moved to B-pod.  *Plff's Ex.* 10.

Plaintiff was charged with two disciplinary violations: "A-6 - Threatening or intimidating any other person;" and "B-2 - Refusing to obey an officer in a timely manner."  *Plff's Ex.* 12.[2] Plaintiff testified he was told he had been written up but that he did not know what the charges were. He stated that he did not know you could be charged with disciplinary violations for refusing to enter a cell with an enemy.

With respect to the threatening charge, Plaintiff testified he wanted the officers to be aware that he had Hepatitis C and if he got into an altercation there was a possibility of a blood on blood situation in which case the Hepatitis C would be passed on.  *Defts' Ex.* 1 at 54.  Plaintiff indicated he was just trying to say the jailers were not doing their job because all he had to do was "hit anybody, you know, bite my tongue, spit on, well, blood on blood and they would contract hepatitis C."  *Id.*  Plaintiff states that the officers said he had threatened to bite his tongue and spit in their faces.  *Id.*

On July 29, 2015, a disciplinary hearing was held.  *Defts' Ex.* 1 at 44; *Defts' Ex.* 1, *Depo. Ex.* 3.  Plaintiff was found guilty of disciplinary violations and given 45 days of disciplinary segregation. *Defts' Ex.* 1 at 45.  His request to call witnesses was refused.

Plaintiff contends he did not have a fair hearing; he was not provided with an incident report or a disciplinary violation report until the hearing; he did not have advance notice prior to the hearing so that he could prepare; and, he wasn't given an opportunity to call witnesses.  In fact, Plaintiff testified that he requested three inmate witnesses who were present in the cell block at the time of the incident and his request was refused.

---

[2] Page 3 of this document is missing.

Plaintiff was allowed to make a statement.  He stated that he was not guilty and did not believe someone could be punished for not entering a cell with an enemy.

Plaintiff indicates he has Hepatitis C and said he did not need to be in a cell where a physical altercation was going to occur.  He noted that Hepatitis C could be spread by blood.

Plaintiff also contends that he was found guilty and the punishment determined prior to the hearing.  In support, he offers a document labeled appeal, dated July 28, 2015, which indicates he was given 45 days of disciplinary segregation.  *Plff's Ex.* 6.  Plaintiff testified that when he was called up for the hearing, the inmate disciplinary document was already completed including the finding of guilt and the 45 days in disciplinary segregation.  *Defts' Ex.* 1 at 56.

Plaintiff testified that when he was given the document he got upset and went into a "profanity-laced tirade."  *Defts' Ex.* 1 at 57.  At the time, he indicated he was having anger problems.  He grabbed the form and was going to go to his cell.  He was cuffed and told he had to listen to Lieutenant Cribbs.  *Id.*  When Plaintiff was taken back to his cell, he asked Boren why he had been called up front before the disciplinary committee.  *Id.* at 58.  Boren indicated he wrote a statement on Plaintiff's behalf.  *Id.*  However, Plaintiff testified that when he obtained discovery in this case there were three statements that Boren had written against him.  *Id.*

Plaintiff submitted a grievance about the incident and was told that the grievance would be forwarded to the warden and that he was in "Ad Seg" and did not "get to choose who you live with in jail."  *Plff's Ex.* 2.  He appealed to Warden Hickman, and on August 3, 2015, the punishment was reduced 30 days.  *Plff's Ex.* 7.  Plaintiff testified that the appeal process consisted of him going in front of Warden Hickman.  *Defts' Ex.* 1 at 46.  Warden Hickman told the Plaintiff that he would cut his time to 15 days if he did not appeal it further.  *Id.*  Plaintiff requested an appeal form and a

-5-

§ 1983 form.  *Id.*  Warden Hickman then said "well, bring it on, big boy. . .this ain't my first rodeo."  *Id.* at 46-47.  Plaintiff testified that Warden Hickman also told Plaintiff that if he filed an appeal  he would make Plaintiff's "life a living hell."  *Id.*  Plaintiff felt like he was being threatened.  *Id.* at 47.

Plaintiff testified that he got off disciplinary segregation in 20 to 25 days because of good behavior yet he remained in administrative segregation.  *Defts' Ex.* A at 59.  On August 28, 2015, Plaintiff submitted a grievance stating he did not have problems with any inmates at the facility except for Parks.  *Plff's Ex.* 8.  He indicated he was still on administrative segregation without any privileges because of what other inmates had said.  *Id.*  He asked to be moved to general population or to a facility where he could have the same privileges as other inmates.  *Id.*

His request was denied by Lieutenant Cribbs.  *Plff's Ex.* 8.  He was told the denial was based on his "documented aggressive actions towards another inmate and threats we have received against you from our information network."  *Id.*  Lieutenant Cribbs said they had exhausted their options and that administrative segregation was not punishment but was 23 hours in and one hour out.  *Id.*  Plaintiff was told he would not be treated differently than other inmates on administrative segregation.  *Id.*

Plaintiff submitted another grievance that same day.  *Plff's Ex.* 9.  In it, he noted that no one had been locked down for threatening him.  *Id.*  He also pointed out that his only aggressive actions were on July 1, 2015, and that Parks, who had also been involved, had been moved back to general population.  *Id.*  He wanted to know why people threatening him were able to effectively keep him in administrative segregation.  *Id.*  He argued these "other inmates" were taking privileges away from him.  *Id.*  In response, Lieutenant Cribbs merely wrote: "answered."  *Id.*

On September 1, 2015, Plaintiff submitted a request asking whether, given his good behavior,

-6-

he would return to general population. *Plff's Ex.* 5. His request was denied by Lieutenant Cribbs. *Id.*

Eventually, Plaintiff testified he was moved to A-pod, the sex offender pod, for two or three days. *Defts' Ex.* 1 at 62. Plaintiff received a disciplinary for going in and out of other inmate's cells. *Id.* At the time, Plaintiff testified that a bunch of inmates were doing the same thing. *Id.* They were not charged. *Id.* Plaintiff was put on administrative segregation again and told he was "not ever going to get out as long as you're in this county jail." *Id.* at 63. Plaintiff was made pod trustee which gave him an additional hour out of the cell each day. *Id.* But during that hour, Plaintiff had to clean the pod. *Id.* He notes that when he went to court or to church he was not kept separate from the other inmates. *Id.* at 66.

Plaintiff was asked to state the differences between being on disciplinary segregation and administrative segregation. Both are 23 hour lock down cells with one hour out each day. *Defts' Ex.* 1 at 50. During one hour out, Plaintiff testified you can shower and use the recreation yard. *Id.* When you are on disciplinary segregation, Plaintiff testified you do not get visits, commissary, or the phone. *Id.* The main difference is that on administrative segregation you have privileges and can e-mail people, use the phone, place orders, do legal research, watch television, and sit at the tables. Plaintiff testified that one hour was simply not enough time to do all this. He testified there were days he was unable to shower because he was working on his lawsuit. Plaintiff believes the Defendants kept him on administrative segregation in retaliation for the filing of grievances and stating he intended to file this lawsuit.

The CCDC Handbook provides the following with respect to Detainee Discipline Process:

> If a Detention Officer feels as though a detainee has violated a rule

the detention officer will inform his/her supervisor.  The detainee will
be moved to administrative segregation until brought before a hearing
officer.

The hearing will be conducted as follows:

A.  When the Disciplinary Hearing Officer is ready to hear your case,
you will be brought before him/her and they will identify any people
present at the hearing for the record.
B.  You will be informed of the specific charge(s) against you and the
possible consequences of a finding of guilt.
C.  The Disciplinary Hearing Officer will ask for your pleas to your
charge(s).  There are only two acceptable pleas, "guilty" or "not
guilty".  Any plea other than these, or refusing to enter a plea, will be
considered a plea of not guilty.
D.  You will be given an opportunity to make a statement on your
behalf and present documentary evidence.
E.  After the Disciplinary Hearing Officer has reach[ed] a verdict you
will be informed of his/her findings and the reason for them.
F.  You will be advised of your right to appeal any or all of the
decisions of the Disciplinary Appeal Hearing Officer.
G.  At this point, your hearing will end, and if you were found guilty,
this will make the beginning of any sanctions imposed.

*Plff's Ex.* 4.

An appeal must be filed within two days of the hearing.  *Id.*  The appeal is to the Warden, and

he has three business days from receipt of the appeal to respond.  *Id.*   If the inmate does not agree

with the Warden's decision, his appeal will be forwarded up the chain of command.  *Id.*

With respect to Warden Hickman, Plaintiff states he acted in a threatening manner, does not

have proper procedures, and violates inmates' Due Process rights.  *Defts' Ex.* 1 at 73.  With respect

to Lieutenant Cribbs, Plaintiff states he kept him on administrative segregation - locked down 23

hours a day.  *Id.* at 73-74.  With respect to Corporal Hall, Plaintiff testified he is one of the detention

center staff who wrote a report regarding the July 28 incident and tried to get Plaintiff to enter the

cell with Parks.  *Id.* at 74.

-8-

With respect to Sergeant Spain and Corporal Berner, Plaintiff testified that they both lied by saying Plaintiff had threatened them which resulted in his getting locked down following the July 2 incident. Finally, with respect to Officer Gustin, Plaintiff testified he was the officer in central control when both Parks and Plaintiff were saying they could not reside together. *Id.* at 75. Further, Plaintiff testified Officer Gustin consistently tried to get the Plaintiff to go into the cell with Parks. *Id.*

## II.  APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III.  DISCUSSION

Defendants have moved for summary judgment arguing: (1) Plaintiff was given notice and an opportunity to be heard with respect to the disciplinary charges; (2) Plaintiff remained in administrative segregation because he was a threat to other inmates, and had been threatened by other inmates, and not as punishment; (3) there is no basis for official capacity immunity; and, (4) they are entitled to qualified immunity.

### A.  Section 1983

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution.  *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).  The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.  *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

### B.  Due Process

When "an inmate is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, due process requires some kind of hearing beforehand."  *Jones v. Mabrey*, 723 F.2d 590, 594 (8th Cir. 1983).  "The Supreme Court has outlined the procedures correctional facilities must follow to conduct an impartial due process hearing on a disciplinary matter."  *Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008) (*citing Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974)).  These procedures include advance written notice of the charges, a brief

period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence.  *Id.; see also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

 The notice to be afforded is written notice at least 24 hours in ***advance*** of appearance before a disciplinary committee.  *Wolff*, 418 U.S. at 564.  As the Supreme Court noted, "[p]art of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact."  Here, Plaintiff testified he received no notice of the charges before he appeared before the disciplinary committee.  Defendants do not even appear to argue that the Plaintiff was given notice before his appearance at the disciplinary committee.  Instead, they argue that "Plaintiff was given notice when he was given an appeal form following the hearing on July 28, 2015.  The August 3 hearing was one where Plaintiff could call and question witnesses, and have an opportunity to provide a statement."  Doc. 20 at 3.  Defendants are not entitled to summary judgment on this claim.

### C.  Administrative Segregation

 "We begin with the fundamental principle that a person held in confinement as a pretrial detainee may not be subjected to any form of punishment for the crime for which he is charged."  *Rapier v. Harris*, 172 F.3d 999, 1002 (7th Cir. 1999); *see also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) ("Pretrial detainees are presumed innocent and may not be punished").  Under *Bell v. Wolfish*, 441 U.S. 520, 538 (1979), "restrictions on pretrial detainees that implicate a liberty interest protected under the Due Process Clause may not 'amount to punishment of the detainee.'"  *Benjamin v. Fraser*, 264 F.3d 175, 188 (2nd Cir. 2001).  "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense."  *Smith v. Copeland*,

87 F.3d 265, 268 (8th Cir. 1996).

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell*, 441 U.S. at 537.   In determining whether a particular restriction constitutes a permissible restriction or amounts to impermissible punishment, the court first asks "whether the restriction is based upon an express intent to inflict punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (citations omitted).  If "there is no indication of such an express intent," the court next considers "whether punitive intent can be inferred from the nature of the restriction." *Valdez*, 302 F.3d at 1045.

In this regard, the Supreme Court in *Bell* held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 539.  "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned." *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 269 (4th Cir. 2002) (internal citations and punctuation omitted).  In *Valdez*, the Ninth Circuit stated:

> A reasonable relationship between the governmental interest and the challenged restriction does not require an "exact fit," nor does it require showing a "least restrictive alternative."  Otherwise, every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand.  Moreover, it does not matter whether we agree with the defendants or whether the policy in fact advances the jail's legitimate interests.  The only question that we must answer is whether the defendants' judgment was rational, that is, whether the defendants might reasonably have thought that the policy would advance its interests.

*Valdez*, 302 F.3d at 1046.

In *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002), the Seventh Circuit stated:

> A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less. But no process is required if he is placed in segregation not as punishment but for managerial reasons. Suppose for example that the only vacant cell left in the jail was in the segregation ward when a new prisoner arrived; placing him in that cell would be a managerial decision. Or suppose, . . . that a prisoner was placed under particularly restrictive conditions of confinement at the jail because he was considered a suicide risk. Again, no hearing would be required. Ditto if he was placed in segregation to protect himself from other prisoners, or to protect jail staff from his violent propensities. As long as the purpose was indeed preventive rather than a punitive one, he would not be entitled to notice and a hearing. . . . In none of these cases would a hearing be practicable, or even useful, because managerial decisions do not have the character of rulings applying legal standards to facts, the kind of rulings for which adjudicative hearings are designed.

*Id.* 286 F.3d at 438; *but, see Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) ("Requiring a pretrial detainee to work or be placed in administrative segregation is punishment. . . . Regardless of whether the detentions are classified as 'administrative,' if a pre-trial detainee must remain in a lock-up area if he does not work, the detention amounts to punishment.").

Similarly, in *Brown-El v. Delo*, 969 F.2d 644 (8th Cir. 1992), the Court noted that it did:

> not quarrel with the prison's need to segregate individual inmates from the general prison population for non-punitive reasons; for example, where the inmate is being held pending an investigation of misconduct charges or where there is a threat to the safety and security of the institution. Absent a showing of an expressed intent to punish by the prison officials, whether an inmate is segregated for "punitive" reasons or for administrative purposes generally will turn on whether the detention is reasonably related to a legitimate government objective. If the decision to segregate is arbitrary or purposeless, a court may infer that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon inmates.

*Id.* at 647-48 (internal quotation marks and citations omitted).

-13-

Here, Plaintiff was released from "disciplinary segregation" and immediately placed on "administrative segregation." While administrative segregation was not as restrictive as disciplinary segregation, it was much more restrictive in terms of privileges and out-of-cell time. As Plaintiff points out, the other inmate involved in the July 28 incident was released from disciplinary segregation back to general population. Plaintiff believes the decision may have been in retaliation for his having submitted grievances and having told Defendants he was going to file a lawsuit. Although there may have been valid reasons for the decision to place Plaintiff on administrative segregation, they are not clear from the record. Defendants are not entitled to judgment in their favor on this claim.

### D. Official Capacity Claim

Here, Plaintiff's official capacity claims are based on: the alleged policy of the CCDC of not affording inmates Due Process in connection with their disciplinary procedures, and (2) the alleged utilization of administrative segregation as a form of punishment. A Plaintiff "seeking to impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that caused the plaintiff's injury." *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). "There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009) (citation omitted).

Based on the summary judgment record, Plaintiff has shown the existence of genuine issues of material fact as to whether there is a widespread, persistent pattern of unconstitutional conduct

with respect to the disciplinary procedures and the use of administrative segregation as punishment. Defendants are not entitled to summary judgment on the official capacity claims.

### E. Qualified Immunity

Qualified immunity "is an *immunity from suit* rather than merely a defense to liability." *Mitchell v. Forsyth*, 472 U.S.  511, 526 (1985) (emphasis in original).  It entitles an individual to not be subject to trial or the other burdens of litigation and "is effectively lost if a case is erroneously permitted to go to trial."  *Id*.  Accordingly, it is important that the question of qualified immunity be resolved as early as possible in the proceedings.  *O'Neil v. City of Iowa City*, 496 F.3d 915, 917 (8th Cir. 2007) (*citing Saucier v. Katz*, 533 U.S.  194, 201 (2001); *Schatz Family ex rel.  Schatz v. Gierer*, 346 F.3d 1157, 1160 (8th Cir. 2003)).

Analyzing a claim of qualified immunity requires a two-step inquiry.  *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012).  In one step, the deciding court determines whether the facts demonstrate a deprivation of a constitutional right.  *Id*.  (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)).  Next, the court determines whether the implicated right was clearly established at the time of the deprivation.  *Id*.  (*citing Parrish*, 594 F.3d at 1001).  In considering those steps at the summary judgment phase, a district court is required to view the genuinely disputed facts in the light most favorable to the non-moving party, provided the record does not so contradict the facts as to render so viewing them unacceptable to any reasonable juror.  *O'Neil*, 496 F.3d at 917.

The Defendants are not entitled to qualified immunity in this case.  Viewed in the light most favorable to the Plaintiff, the facts demonstrate that Plaintiff was deprived of Due Process in connection with the disciplinary hearing.  The right to Due Process in connection with a disciplinary hearing, including the right to advance notice, was clearly established at the time of the Defendants'

actions. *See Wolff*, 418 U.S. at 563-66.  Reasonable prison officials would have known that they

acted in a manner which deprived another of a known constitutional right.  *See e.g., Dible v. Scholl,*

506 F.3d 1106 (8th Cir. 2007) ("When Dible's disciplinary notice was issued, 29 years had passed

since the Supreme Court first declared what due process required in a prison disciplinary notice.

Twenty-nine years is enough time that 'a reasonably competent public official should know the law

governing his conduct.") (internal citations and quotations omitted).

Similarly, viewed in the light most favorable to the Plaintiff, the facts establish that

Defendants were using administrative segregation to impermissibly punish the Plaintiff.  On an

abstract level, it is clearly established that the right to due process guaranteed by the Fourteenth

Amendment precludes punishment of a pretrial detainee.  *Bell*, 441 U.S. at 535.  Similarly, it was

clearly established that "if a particular condition or restriction of pretrial detention is reasonably

related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"

*Id.* at 539.  In this case, there are questions of fact as to Defendants' motivation for keeping Plaintiff

in administrative segregation.  If their motivation was punishment, they are not entitled to qualified

immunity as a reasonable official would have known that the alleged action violated clearly

established law.  This question of fact precludes a finding that Defendants are entitled to qualified

immunity on this claim.

## IV.  CONCLUSION

For the reasons stated above, I recommend that Defendants' Motion for Summary Judgment

(Doc. 19) be **DENIED** and this case scheduled for a jury trial.

**The parties have fourteen (14) days from receipt of the report and recommendation in**

**which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely**

objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 21st day of July, 2016.

/s/ *Mark E. Ford*

HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE